1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8    NAVEED AFZAL HAQ,

9                          Petitioner,          Case No. C13-902-RAJ-JPD

10        v.

11   STEVEN SINCLAIR,                            REPORT AND RECOMMENDATION

12                          Respondent.

13
14              INTRODUCTION AND SUMMARY CONCLUSION

15        Petitioner is a state prisoner who is currently confined at the Washington State

16  Penitentiary in Walla Walla, Washington.  He seeks relief under 28 U.S.C. § 2254 from a 2010

17  King County Superior Court judgment and sentence.  Respondent has filed an answer to

18  petitioner's amended habeas petition and has submitted relevant portions of the state court

19  record.  Petitioner has filed a response to respondent's answer.  The Court, having carefully

20  reviewed the amended petition, all briefs of the parties, and the state court record, concludes that

21  petitioner's amended federal habeas petition should be denied, and this action should be

22  dismissed with prejudice.

23

REPORT AND RECOMMENDATION - 1

## FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying

petitioner's convictions as follows:

Naveed Haq entered the offices of the Jewish Federation of Greater Seattle late in the afternoon of July 27, 2006.  He was armed with two pistols.  Once inside, he demanded to speak with a manager.  When advised that Haq was armed, the manager alerted another to call 911 before she came out to meet him in the reception area.

Shortly thereafter, Haq began shooting.  He killed one woman and seriously injured five other women.

Later, Haq spoke with a 911 operator who responded to an emergency call from the Federation's offices.  He demanded to be put in contact with the media to "make a point" about America's foreign policy in Iraq and Israel.  After several minutes of conversation, Haq specifically demanded to be connected to CNN, and he was told this demand was impossible.  He then surrendered to the police response team outside the building.

The State charged him with aggravated first degree murder, two counts of attempted second degree murder, three counts of attempted first degree murder, unlawful imprisonment, and malicious harassment.  Haq raised defenses of insanity and diminished capacity.

Before the incident at the Jewish Federation, doctors diagnosed and treated Haq for bipolar disorder with psychotic features.  Prior to trial, pursuant to Superior Court Criminal Rule (CrR) 4.7 and RCW 10.77.060(2), the court ordered Haq to submit to a mental-health examination by the State's mental health expert.  This expert testified at trial.

While awaiting trial, Haq was kept in solitary confinement in the King County Jail.  He was allowed one hour each day to use the telephone.  The jail recorded conversations between Haq and his parents, who live in Eastern Washington.  In accordance with jail policies, written notice of the recording of telephone calls was provided to Haq and posted next to each telephone.  Additionally, before every phone call, Haq's parents received audio notice that the conversation would be recorded.

Haq's first trial in 2008 ended in a mistrial due to the jury's inability to reach a verdict.  On retrial in 2009, the trial court, over defense objection, admitted into evidence recordings of some of the jail telephone conversations between Haq and his parents.

REPORT AND RECOMMENDATION - 2

1        The jury convicted Haq of all counts as charged. The court sentenced Haq
2 to life in prison for the first degree aggravated murder conviction and imposed
further incarceration time for the other convictions.

3 (Dkt. 13, Ex. 2 at 1-2.)

4 PROCEDURAL BACKGROUND

5        Petitioner, through counsel, appealed his judgment and sentence to the Washington Court

6 of Appeals. (*See id.*, Exs. 3, 4 and 5.) The Court of Appeals affirmed the judgment and sentence

7 in a published opinion issued on January 30, 2012 and corrected on February 24, 2012. (*Id.*, Ex.

8 2.) Petitioner thereafter sought review by the Washington Supreme Court. (*Id.*, Ex. 6.)

9 Petitioner presented the following ten issues to the Supreme Court for review:

10        1.    Was *McAllister v. Washington Territory*, which holds that the state
11 bears the burden of proving sanity beyond a reasonable doubt and which was
never overruled before the adoption of the state constitution, the controlling law at
12 the time of adoption and therefore incorporated into the right to a jury trial?

13        2.    Does disclosure of recorded jail calls to the prosecutor's office, un-
tethered to any legitimate security concern and without a requirement of probable
14 cause, reasonable suspicion, or any other threshold showing – but simply to allow
the prosecutor's fishing expedition – run afoul of Article 1, Section 7 of the
15 Washington Constitution?

16        3.    Does recording of jail calls to investigate pending cases and
providing the prosecutor unlimited access to the calls violates [sic] a defendant's
17 Sixth Amendment right to counsel?

18        4.    Can a separation of powers challenge to a statute mandating
exclusion of evidence, even if the trial judge has discretion to reach a similar
19 result, be raised for the first time on appeal?

20        5.    Under the holding in *State v. Hacheney*, 160 Wn.2d 503, 158 P.3d
1152 (2007), that "[a] person is guilty of aggravated first degree murder if the
21 *murder* was committed 'in the course of' an enumerated *felony [but] . . . not,* if
the enumerated felony is committed in the course of the murder," must a charged
22 burglary aggravating factor be more than incidental to the murder and have
independent purpose or intent?

23

REPORT AND RECOMMENDATION - 3

6.      Is requiring a separate purpose and intent for the aggravating felony necessary as a matter of state and federal constitutional law to truly narrow the class of people who are charged with aggravated murder and potentially subject to the death penalty?

7.      Must objected to and improper testimony as to guilt, which was excluded by ruling of the trial court, be reviewed under the constitutional harmless error test, rather than the abuse of discretion standard applicable to mere evidentiary errors?

8.      Do incorrect legal definitions of mental elements given by state's expert witnesses invade the province of the judge to instruct on the law; and, must the improper admission of such testimony, as constitutional error, be evaluated under the constitutional harmless error test rather than an abuse of discretion standard?

9.      Must reviewing courts first evaluate claims of manifest constitutional error to determine if they are truly constitutional errors; and, if so, consider whether the error is harmless under the constitutional harmless error test?

10.      Is an accused person entitled, as a matter of state and federal constitutional right, to present evidence relevant to the central issue at trial where the evidence augments other evidence and rebuts testimony of state's witnesses?

(Dkt. 13, Ex. 6 at 1-2.)

The Supreme Court denied review without comment on June 5, 2012.  (*Id.*, Ex. 7.)  The Washington Court of Appeals issued its mandate terminating direct review on August 29, 2012. (*Id.*, Ex. 8.)  Petitioner now seeks federal habeas review of his convictions.

<u>GROUNDS FOR RELIEF</u>

Petitioner identifies four grounds for relief in his amended petition for writ of habeas corpus:

GROUND ONE:  Violation of Sixth Amendment right to counsel.

Supporting facts:  The decision of the Court of Appeals approving the recording of jail calls for purpose of investigating pending cases and providing the

REPORT AND RECOMMENDATION - 4

prosecution unlimited access to those calls violates a defendant's Sixth Amendment right to counsel.

GROUND TWO:  Improper opinion testimony as to guilt is reviewed for an abuse of discretion rather than harmless error.

Supporting facts:  The holding of the Division I Court of Appeals that improper opinion testimony as to guilt is reviewed for an abuse of discretion, not the constitutional harmless error test, is in conflict with the decisions of this Court, Washington State Supreme Court decisions, and decisions of the Court of Appeals.  It is a constitutional issue and an issue of substantial public importance.

GROUND THREE:  Improper instruction as to definitions of intent and premeditation.

Supporting facts:  The Division I Court of Appeals failed to consider the improper instruction given by the state's experts on the critical definitions of intent and premeditation as an invasion of the province of the judge.  The issue is constitutional and an issue of substantial public importance.

GROUND FOUR:  Evidence relevant to defense was excluded simply because other evidence was presented on the issue.

Supporting Facts:  The decision of the Division I Court of Appeals holding that evidence relevant to Mr. Haq's defense was properly excluded simply because other evidence was presented on the issue is in conflict with other reported decisions, is a constitutional issue and an issue of substantial public importance.

(*See* Dkt. 7 at 6, 7, 9 and 10.)

## DISCUSSION

Respondent concedes that petitioner has properly exhausted the four grounds for relief asserted in his amended petition.  Respondent argues, however, that petitioner is not entitled to relief with respect to any of those claims.

## Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly

REPORT AND RECOMMENDATION - 5

1    established federal law, as determined by the Supreme Court, or if the decision was based on an

2    unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

3         Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

4    court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

5    or if the state court decides a case differently than the Supreme Court has on a set of materially

6    indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the

7    "unreasonable application" clause, a federal habeas court may grant the writ only if the state

8    court identifies the correct governing legal principle from the Supreme Court's decisions, but

9    unreasonably applies that principle to the facts of the prisoner's case.  *See id.* at 407-09.

10        The Supreme Court has made clear that a state court's decision may be overturned only if

11   the application is "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).  The

12   Supreme Court has further explained that "[a] state court's determination that a claim lacks merit

13   precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

14   of the state court's decision."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing

15   *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

16        Clearly established federal law, for purposes of AEDPA, means "the governing legal

17   principle or principles set forth by the Supreme Court at the time the state court render[ed] its

18   decision."  *Lockyer*, 538 U.S. at 71-72.  "If no Supreme Court precedent creates clearly

19   established federal law relating to the legal issue the habeas petitioner raised in state court, the

20   state court's decision cannot be contrary to or an unreasonable application of clearly established

21   federal law."  *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d

22   480, 485-86 (9th Cir. 2000)).  If a habeas petitioner challenges the determination of a factual

23

REPORT AND RECOMMENDATION - 6

1   issue by a state court, such determination shall be presumed correct, and the applicant has the

2   burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C.

3   § 2254(e)(1).

4                          Ground One:  Recording of Jail Telephone Calls

5          Petitioner asserts in his first ground for relief that the recording of jail telephone calls

6   between him and his parents violated his Sixth Amendment right to counsel.  (Dkt. 7 at 6.)

7   Respondent argues that the Supreme Court has not held passive recordings of such conversations

8   violate the Sixth Amendment and that the state court reasonably determined there was no Sixth

9   Amendment violation in petitioner's case because a state agent did not interrogate petitioner.

10  (Dkt. 11 at 10-14.)

11         The United States Supreme Court has held that after the right to counsel attaches in a

12  criminal proceeding, the Sixth Amendment is violated "when the State obtains incriminating

13  statements by knowingly circumventing the accused's right to have counsel present in a

14  confrontation between the accused and a state agent."  *Maine v. Moulton*, 474 U.S. 159, 176

15  (1985).  The Supreme Court has also made clear, however, that "the Sixth Amendment is not

16  violated whenever—by luck or happenstance—the State obtains incriminating statements from

17  the accused after the right to counsel has attached."  *Id.* (citing *United States v. Henry*, 447 U.S.

18  264, 276 (1980)).

19         The Washington Court of Appeals rejected petitioner's Sixth Amendment claim on direct

20  appeal and explained its reasoning as follows:

21              Haq next claims that the recording of King County Jail inmates' telephone
            conversations and the supplying of these recordings to the prosecution as an
22          investigative tool violates his Sixth Amendment right to counsel.  We disagree.

23

REPORT AND RECOMMENDATION - 7

The Sixth Amendment to the United States Constitution guarantees "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."  The United States Supreme Court has held that a person's right to counsel attaches "at or after the time that judicial proceedings have been initiated against him. . . ."[1]  Once this right attaches, the government may not interrogate a defendant without his waiver of counsel.[2]  When the State knowingly exploits "***an opportunity to confront the accused without counsel being present***[,]" its actions are "***as much a breach of the State's obligation not to circumvent the right to assistance of counsel as is the intentional creation of such an opportunity***."[3]  Such knowing exploitation, or "deliberate elicitation," has been found to occur where:  (1) a codefendant becomes an informant and transmits his conversations to the police (whether such transmission occurred after a meeting initiated by the government agent or a codefendant),[4] and (2) where a fellow prisoner engages in conversation with the defendant after he is told by government officials to be alert to any incriminating statements made by the defendant.[5]

Here, it is undisputed that the right to counsel had attached at the time of Haq's calls to his family.  It is also undisputed that the government did not interrogate Haq during these telephone conversations.  He was talking to family members, and there is no suggestion that they were government agents who questioned their son on behalf of the State.

This case is analogous to *United States v. Hearst*.[6]  There, while in custody, the defendant,

> communicated [with a visitor] over a telephone-like intercommunication system. . . .  Most of the conversation between the two was monitored and recorded through a switchboard-type device operated by a deputy sheriff. . . .  Officials at the jail had previously determined to record all of appellant's conversations with her visitors in accordance with the jail policy. . . .

---

[1]  [Court of Appeals footnote 68]  *Fellers v. U.S.*, 540 U.S. 519, 523, 124 S.Ct. 1019, 157 L.Ed.2d 1016 (2004) (quoting *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977)).

[2]  [Court of Appeals footnote 69]  *Brewer*, 430 U.S. at 401, 97 S.Ct. 1232.

[3]  [Court of Appeals footnote 70]  *State v. Sargent*, 111 Wash.2d 641, 645-46, 762 P.2d 1127 (1988) (quoting *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985)).

[4]  [Court of Appeals footnote 71]  *See Massiah v. U.S.*, 377 U.S. 201, 204-05, 84 S.Ct. 1199, 12 l.Ed.2d 246 (1964); *Moulton*, 474 U.S. at 174-75, 106 S.Ct. 477.

[5]  [Court of Appeals footnote 72]  *See U.S. v. Henry*, 447 U.S. 264, 271-72, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980).

[6]  [Court of Appeals footnote 73]  563 F.2d 1331 (9ᵗʰ Cir. 1977), *cert denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978).

REPORT AND RECOMMENDATION - 8

The jail supervisor delivered the recording of the conversation . . . to the FBI and the prosecution.[7]

Hearst argued that his case was comparable to *Massiah v. United States*.[8] There, the defendant made incriminating statements to a fellow conspirator, who had agreed to work with government agents and been instructed to engage Massiah in conversation.[9]  The government agents listened to these conversations over a radio transmitter.[10]  The *Hearst* court held there was no violation of the *Massiah* rule.  "The obvious problem with applying *Massiah* to the facts surrounding the making of the . . . tape is the ***absence of any governmental effort to elicit incriminating statements from appellant.***"[11]  The court held that interrogation is a prerequisite for a Sixth Amendment violation as no such protection of the right to assistance of counsel comes into play if there is no interrogation.[12]

. . . .

As we have explained, the phone recordings that were admitted into evidence at trial were between Haq and his parents.  Neither parent agreed to work with the government to elicit information.  The telephone records were neither a product of interrogation nor an investigatory technique that otherwise sought to circumvent Haq's right to counsel.  Thus, Haq's statements during the recorded telephone conversations did not violate his Sixth Amendment right to counsel.

Haq argues that the psychological impact of his solitary confinement should support a finding that the recording of his phone calls to his parents was a forced suspension of his Sixth Amendment right.  Though the Supreme Court in *United States v. Henry*[13] did acknowledge the potential psychological effects of confinement, it did so in the context of "ploys of undercover Government agents."[14]  Here, there was no undercover agent engaging in any ploys.  Haq's family was clearly and explicitly told prior to each conversation that their conversations could be recorded, and Haq was informed of the same facts in writing.

---

[7] [Court of Appeals footnote 74] *Id.* at 1344.

[8] [Court of Appeals footnote 75] 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

[9] [Court of Appeals footnote 76] *Id.* at 202-03, 84 S.Ct. 1199.

[10] [Court of Appeals footnote 77] *Id.*

[11] [Court of Appeals footnote 78] *Hearst*, 563 F.2d at 1347 (emphasis added).

[12] [Court of Appeals footnote 79] *Id.* at 1348.

[13] [Court of Appeals footnote 81] 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980).

[14] [Court of Appeals footnote 82] *Id.* at 273-74, 100 S.Ct. 2183.

REPORT AND RECOMMENDATION - 9

Haq also relies on the United States Supreme Court's statement in *Maine v. Moulton*:[15] "knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity."[16]  But, nowhere in *Massiah*, *Moulton*, or *Henry* did the court suggest that passive listening by the government to conversations of a pre-trial detainee is violative of his Sixth Amendment right. In fact, in *Henry*, the Court noted that "[t]he situation where the 'listening post' is an inanimate electronic device differs; such a device has no capability of leading the conversation into any particular subject or prompting any particular replies."[17]  The Court reiterated this distinction in *Moulton*, distinguishing between the actions of the government informant in the case, who had "frequently pressed Moulton for details" and "the 'listening post,'" which "cannot or does not participate in active conversation and prompt particular replies."[18]

Haq argues that by recording and listening to the phone calls, the King County Jail employees acted as government agents.  They are government agents, but that fact is not analytically helpful.  The United States Supreme Court has held that mere government agent interaction with a pre-trial detainee does not itself violate a defendant's right to counsel.[19]  Recording of telephone conversations under the procedures here is simply an interaction, nothing more. Consequently, we reject Haq's argument.

(Dkt. 13, Ex. 2 at 10-12.)

The state court applied the proper standard in evaluating petitioner's Sixth Amendment claim and reasonably concluded that the admission at trial of the recorded phone conversations between petitioner and his parents did not violate petitioner's right to counsel because the conversations were not the product of any interrogation by state agents.  Petitioner fails to demonstrate that the state court's adjudication of his Sixth Amendment claim was contrary to, or

---

[15] [Court of Appeals footnote 83]  474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985).

[16] [Court of Appeals footnote 84]  *Id.* at 176, 106 S.Ct. 477.

[17] [Court of Appeals footnote 85]  *Henry*, 447 U.S. at 272 n. 9, 100 S.Ct. 2183 n. 9.

[18] [Court of Appeals footnote 86]  *Moulton*, 474 U.S. at 176 n. 13, 106 S.Ct. 477 n. 3.

[19] [Court of Appeals footnote 87]  *Kuhlmann v. Wilson*, 477 U.S. 436, 460, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (where the government agent did not ask questions of the defendant, but "'only listened' to respondent's 'spontaneous' and 'unsolicited' statements" no Sixth Amendment violation occurred).

REPORT AND RECOMMENDATION - 10

constituted an unreasonable application of, clearly established federal law.  Accordingly,

petitioner's federal habeas petition should be denied with respect to his first ground for relief.

Ground Two:  Opinion Testimony

Petitioner, in his second ground for relief, challenges the presentation at his trial of

improper opinion testimony concerning guilt.  (Dkt. 7 at 7.)  While petitioner fails to identify in

his amended petition the precise testimony at issue, a review of the Washington Court of

Appeals' opinion affirming petitioner's convictions, in combination with petitioner's response to

respondent's answer, suggests that this claim arises out of opinion testimony concerning

petitioner's mental state, premeditation, and intent presented by three state witnesses:  expert

witness Dr. Victor Reus, and police officers Al Cruise and William Collins.  (*See* Dkt. 13, Ex. 2

at 17-20 and Dkt. 14 at 8-10.)  Petitioner contends that the challenged testimony invaded the

province of the jury and, thus, denied him his right to a fair trial.  (*See id.*)

Respondent argues that petitioner's second ground for relief asserts only an error of state

evidentiary law and that petitioner is therefore not entitled to relief with respect to this claim.

(Dkt. 11 at 14.)  Respondent further argues that, even if petitioner's second ground for relief

raises a constitutional issue, petitioner is not entitled to relief because the state courts reasonably

rejected the claim.  (*Id.* at 16-19.)

It is well established that "federal habeas corpus relief does not lie for errors of state

law."  *Lewis v. Jeffers*, 497 U.S. 764 (1990).  The Supreme Court emphasized in *Estelle v.

McGuire*, 502 U.S. 62 (1991), that it is not the province of federal habeas courts to re-examine

state court conclusions regarding matters of state law and that a federal court, in conducting

habeas review  "is limited to deciding whether a conviction violated the Constitution, laws or

treaties of the United States."  *Id.* at 67-68.  Thus, state court procedural and evidentiary rulings

REPORT AND RECOMMENDATION - 11

1  are not subject to federal habeas review unless such rulings "violate[] federal law, either by

2  infringing upon a specific constitutional or statutory provision or by depriving the defendant of

3  the fundamentally fair trial guaranteed by due process." *Walters v. Maass*, 45 F.3d 1355, 1357

4  (9th Cir. 1995) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). *See also*, *Jammal v. Van de*

5  *Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). When considering whether erroneously admitted

6  evidence rendered a trial fundamentally unfair, the federal habeas court must determine whether

7  the error "'had substantial and injurious effect or influence in determining the jury's verdict.'"

8  *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

9      Respondent relies upon the Ninth Circuit's recent decision in *Moses v. Payne*, 555 F.3d

10  742 (9th Cir. 2009), to support his argument that the admissibility of the testimony at issue in

11  petitioner's second ground for relief is an issue of state evidentiary law. In *Moses*, the Ninth

12  Circuit recognized that the admission of expert testimony does not violate the Constitution even

13  if the testimony pertains to an ultimate issue to be decided by the jury:

14       Moses relies on Supreme Court decisions establishing that it is the sole province
         of the jury to determine questions of credibility and to weigh the evidence
15       adduced at trial. *See Goldman v. United States*, 245 U.S. 474, 477, 38 S.Ct. 166,
         62 L.Ed. 410 (1918); *see also*, *United States v. Young*, 470 U.S. 1, 18-19, 105
16       S.Ct. 1038, 84 L.Ed.2d 1(1985) (prosecutor erred by expressing a personal view
         that the defendant was guilty).

17
         These cases do not support Moses's contention that the opinion testimony
18       of Dr. Harruff, Evan Thompson, and Tamara Muller improperly intruded upon the
         province of the jury and thereby deprived Moses of a fair trial. Neither of these
19       cases, nor any other that we have found, supports the general proposition that the
         Constitution is violated by the admission of expert testimony concerning an
20       ultimate issue to be resolved by the trier of fact. Accordingly, under AEDPA, we
         must reject Moses's claim to the contrary. *See* 28 U.S.C. § 2254(d); *Van Patten*,
21       128 S.Ct. at 746-47; *Panetti*, 127 S.Ct. at 2858; *Musladin*, 549 U.S. at 76, 127
         S.Ct. 649.
22
         That the Supreme Court has not announced such a holding is not
23       surprising, since it is "well-established . . . that expert testimony concerning an

REPORT AND RECOMMENDATION - 12

ultimate issue is not per se improper." *Hangarter v. Provident Life &Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal quotations marks omitted) (alterations in original).  Although "[a] witness is not permitted to give direct opinion about the defendant's guilt or innocence . . . . an expert may otherwise testify regarding even an ultimate issue to be resolved by the trier of fact."  *United States v. Lockett*, 919 F.2d 585, 590 (9th Cir. 1990); *see also,* Fed. R. Evid. 704(a).
. . . .

Ultimately, however, for purposes of our AEDPA review, it suffices to determine that the constitutionality of such testimony is "an open question in [the Supreme Court's] jurisprudence." *Musladin*, 549 U.S. at 76, 127 S.Ct. 649.  We conclude that the state appellate court's decision to affirm the trial court's decision to admit the opinion testimony of Dr. Harruff, Thompson, and Muller was not contrary to or an unreasonable application of Supreme Court precedent.

*Moses*, 555 F.3d at 761-62.

While this Court concurs that *Moses* applies to some of the testimony at issue in petitioner' second ground for relief, respondent overreaches in suggesting that it applies to all of the challenged testimony.  *Moses* was specifically limited to expert testimony and, thus, aids in the resolution of claims pertaining to the testimony of state expert Dr. Victor Reus.  However, the testimony of the police officers at issue in petitioner's second ground for relief is not in the nature of expert testimony and *Moses* therefore does not aid in the resolution of petitioner's claims pertaining to those statements.  This Court will address separately the challenged testimony of each of the three state witnesses identified above.

### 1. Dr. Victor Reus

Dr. Reus was a rebuttal witness for the prosecution.  He testified as follows regarding petitioner's actions at the Jewish Federation:  "[H]e then proceeds to shoot people pretty systematically going from office to office and shooting.  Going back and shooting several people twice.  He's shooting, I think, with intent at. . . ."  (Dkt. 17, Ex. 53 at 30.)  The defense objected to this testimony and the trial court sustained the objection, ordered the testimony stricken, and

subsequently explained to the jury why the testimony had been stricken.  (*See* Dkt. 17, Ex. 53 at 30, 35-36.)

The Court of Appeals rejected petitioner's challenge to this testimony on direct appeal. The Court of Appeals explained that while Dr. Reus's statement was improper, the trial court properly dealt with the error by instructing the jury to disregard the statement and also explaining why it should do so.  (Dkt. 13, Ex. 2 at 18.)  The Court of Appeals concluded that because jurors are presumed to follow the court's instructions, this portion of Dr. Reus's testimony did not deprive petitioner of his right to a fair trial.  (*Id.*)

Dr. Reus also testified regarding his familiarity with individuals with bipolar disorder:

> People might have remembered the movie of Jonathan Nash, a guy who won a Nobel prize who had bipolar disorder or schizophrenia. . . .  I mean, I have had patients in my practice who—and do currently actually who are functioning as surgeons.  I have a person who's functioning as a judge who carries a bipolar diagnosis.  So—and when I was in D.C., you known, several of my mentors there were treating members of the U.S. congress [sic] with bipolar disorder.

(*Id.*)  The defense objected to this testimony and the trial court sustained the objection and ordered the testimony stricken.  (*Id.*)  On direct appeal, the Court of Appeals once again concluded that the testimony did not constitute a denial of petitioner's right to a fair trial given the presumption that the jury will follow the Court's instructions.

Finally, Dr. Reus testified as follows in response to a question about how petitioner's purchase of guns contributed to his conclusions:

> Well, I think they go to the heart of premeditation and intent.  And, you know, I think that there are aspects of the purchases that, you know, I think are unusual. . . .  The choices he makes about ammunition I think are somewhat unusual in terms of his espoused intent.

REPORT AND RECOMMENDATION - 14

1   (Dkt. 17, Ex. 53 at 18.)  The defense did not object to this testimony at trial and raised the issue

2   only on appeal.

3          The Court of Appeals rejected the claim, concluding that the error was not manifest.  The

4   Court of Appeals explained its conclusion as follows:

5          While lay witnesses may not generally express an opinion on an ultimate fact of a
           case:

6
               It has long been recognized that a qualified expert is competent to
7              express an opinion on a proper subject, even though he thereby
               expresses an opinion on the ultimate fact to be found by the trier of
8              fact.  The mere fact that the opinion of an expert covers an issue
               which the jury has to pass upon does not call for automatic
9              exclusion.[20]

10         Thus, in *State v. Kirkman*,[21] one defendant argued that an expert's testimony that
           a child's claim of sexual abuse appeared truthful was impermissible.[22]  But, the
11         court held that the expert did not invade the province of the jury, as the expert's
           statement was not a clear comment on the child's credibility.[23]  Similarly, in *State
12         v. Hayward*,[24] expert testimony whether the victim suffered a temporary but
           substantial loss or impairment of a bodily function was not an infringement of the
13         jury trial right, though the jury instructions included the same language.[25]  The
           court held that, because the expert did not directly discuss Hayward's guilt, his
14         testimony regarding an ultimate issue was not unconstitutional.[26]

15         Here, as in *Hayward* and *Kirkland* [sic], Dr. Reus's challenged statements,
           while concerning an ultimate issue, were not constitutional violations.
16         "[T]estimony is not objectionable simply because it embraces an ultimate issue
           the trier of fact must decide.  [']The fact that an opinion encompassing ultimate
17         factual issues *supports* the conclusion that the defendant is guilty does not make

18    _____

19         [20] [Court of Appeals footnote 159]  159 Wash.2d at 929, 155 P.3d 125 (citing *Gerberg v. Crosby*, 52
      Wash.2d 792, 795-96, 329 P.2d 184 (1958); *State v. Ring*, 54 Wash.2d 250, 255, 339 P.2d 461 (1959)).

20         [21] [Court of Appeals footnote 160]  159 Wash.2d 918, 155 P.3d 125 (2007).

21         [22] [Court of Appeals footnote 161]  *Id.* at 929-30, 155 P.3d 125.

22         [23] [Court of Appeals footnote 162]  *Id.* at 930, 155 P.3d. 125.

           [24] [Court of Appeals footnote 163]  152 Wash.App. 632, 217 P.3d 354 (2009).

23         [25] [Court of Appeals footnote 164]  *Id.* at 650, 217 P.3d 354.

           [26] [Court of Appeals footnote 165]  *Id.* at 650-51, 217 P.3d 354.

the testimony an improper opinion of guilt.'"[27]  Thus, Dr. Reus's testimony was
not an infringement of Haq's constitutional right.  The claimed error is not
manifest.

(Dkt. 13, Ex. 2 at 19-20.)

To the extent Dr. Reus's challenged testimony is properly construed as testimony going
to an ultimate issue to be resolved by the trier of fact, *Moses* makes clear that such testimony
does not violate the Constitution and, thus, provides no basis for federal habeas relief.  To the
extent Dr. Reus's testimony may otherwise be deemed improper, the Court of Appeals properly
noted that the objectionable testimony was ordered stricken by the trial court, and that jurors
were instructed not to consider it.  The Court of Appeals recognized, as has the United States
Supreme Court, that jurors are presumed to follow their instructions.  *See Weeks v. Angelone*,
528 U.S. 225, 234 (2000) (citing, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).  Thus, the
Court of Appeals reasonably concluded that the challenged opinion testimony of Dr. Reus did
not violate plaintiff's federal constitutional rights.

### 2.  Detective Al Cruise

Petitioner also challenges testimony by Al Cruise, a police detective who transported
petitioner from the Jewish Federation to the police station following the shooting.  Detective
Cruise testified during the State's case-in-chief that "it was apparent to me that [Haq] wasn't
acutely insane." (Dkt. 17, Ex. 38 at 43.)  The defense objected to this testimony and the trial
court ordered the testimony stricken.  (*See id.*)  The Court of Appeals acknowledged on direct
appeal that this testimony was improper.  (Dkt. 13, Ex. 2 at 17.)  However, the Court of Appeals
concluded that because the testimony was stricken by the trial court, and because the jury was

---

[27]  [Court of Appeals footnote 166]  *Hayward*, 152 Wash.App. at 649, 217 P.3d 354 (quoting *City of Seattle v. Heatley*, 70 Wash.App. 573, 579, 854 P.2d 658 (1993) (citing *Demery*, 144 Wash.2d at 759, 30 P.3d 1278)).

1   instructed prior to deliberations that it was the sole judge of the credibility of witnesses,

2   Detective Cruise's statement did not require reversal.  (Dkt. 13, Ex. 2 at 17.)

3          As noted above, the Supreme Court has repeatedly recognized the principle that jurors are

4   presumed to follow their instructions.  *See Weeks*, 528 U.S. at 234.  Given that the challenged

5   testimony was stricken, and that the jury was instructed not to consider such testimony, the Court

6   of Appeals reasonably concluded that the challenged testimony of Detective Cruise did not

7   violate petitioner's constitutional rights.

8          ### 3.  *Officer William Collins*

9          Finally, petitioner challenges statements made at trial by Seattle Police Officer William

10  Collins, one of the officers who responded to the shooting at the Jewish Federation.  Officer

11  Collins was asked by the prosecutor to describe the information provided over the police radio

12  regarding the incident, and he testified as follows:

13         It was stated that numerous people were calling in to 911 saying that they had
           been shot and that there was a gunman loose and that he was holding hostages and
14         basically being an active shooter, which means he was hunting for people and
           shooting people as he found them.

15

16  (Dkt. 17, Ex. 34 at 53.)  Officer Collins also referred to the woman killed by petitioner, Pamela

17  Waechter, as the person who "had been executed. . . ."  (*Id.*, Ex. 34 at 77.)   The defense did not

18  object to this testimony at trial and raised the issue only on appeal.

19         The Court of Appeals began its discussion regarding the testimony of Officer Collins, and

20  the testimony of other witnesses which was not objected to at trial, by noting that claimed errors

21  which are not challenged at trial are analyzed under Rule 2.5(a)(3) of the Washington Rules of

22  Appellate Procedure.  RAP 2.5(a) provides that the appellate court may refuse to review a claim

23  of error which was not raised in the trial court.  However, RAP 2.5(a)(3) permits a party to raise

REPORT AND RECOMMENDATION - 17

a claim involving a "manifest error affecting a constitutional right" for the first time in the appellate court.

The Court of Appeals explained in petitioner's case that

> For purposes of RAP 2.5(a)(3), "manifest error" requires a showing of actual prejudice. To demonstrate actual prejudice, there must be a plausible showing by the appellant that the asserted error had practical and identifiable consequences in the trial or the case. . . . [T]he focus of the actual prejudice must be on whether the error is so obvious on the record that the error warrants appellate review. For witness opinion testimony, admission of witness opinion testimony on an ultimate fact, without objection, is not *automatically* reviewable as a manifest constitutional error. But, an explicit or almost explicit opinion on the defendant's guilt or a victim's credibility can constitute manifest error.

(Dkt. 13, Ex. 2 at 19 (internal quotations and citations omitted).)

The Court of Appeals thereafter rejected petitioner's challenge to the testimony of Officer Collins, and explained its reasoning as follows:

> This testimony, to which Haq did not object below, was not an explicit or nearly explicit opinion on Haq's guilt. Further, it was not so prejudicial, in the context of the entire trial, so as to create practical and identifiable consequences. Thus, Haq has not met his burden to show that these statements constitute manifest error in violation of his right to a jury trial.

(*Id.*)

The Washington Court of Appeals reasonably concluded that the challenged testimony of Officer Collins did not rise to the level of a constitutional violation. Moreover, petitioner fails to demonstrate that, even if admission of the challenged testimony did rise to the level of a constitutional violation, the testimony had a "substantial and injurious effect or influence in determining the jury's verdict" when viewed in light of the record as a whole. Accordingly, petitioner's challenge to the testimony of Officer Collins provides no basis for federal habeas relief. *See Brecht* 507 U.S. at 638.

REPORT AND RECOMMENDATION - 18

1    For the reasons sets forth above, petitioner's federal habeas petition should be denied

2    with respect to the entirety of his second ground for relief.

3                              Ground Three:  Expert Testimony

4    Petitioner asserts in his third ground for relief that the state's experts gave improper

5    instructions with respect to the definitions of intent and premeditation.  (Dkt. 7 at 9.)  Once

6    again, petitioner's claim lacks specificity.  However, a review of the Washington Court of

7    Appeals' opinion affirming petitioner's convictions, in combination with petitioner's response to

8    respondent's answer, reveals that this claim arises out of testimony of state witnesses Dr. Victor

9    Reus and Dr. Robert Wheeler who referenced during their testimony legal definitions provided to

10   them by the prosecutor.  (*See* Dkt. 13, Ex. 2 at 20-21 and Dkt. 14 at 10-15.)

11   Respondent argues in response to petitioner' third ground for relief, as he did in response

12   to petitioner's second ground for relief, that the claim raises an error of state law and is not based

13   upon clearly established federal law.  Respondent appears to rely on the Ninth Circuit's decision

14   in *Moses* to support this argument.  While petitioner's second and third grounds for relief both

15   pertain to testimony offered by state experts, the challenges are somewhat different in nature.

16   Petitioner's second ground for relief challenges expert testimony on the grounds that it invaded

17   the province of the trier of fact to decide ultimate issues in the case, and petitioner's third ground

18   for relief challenges expert testimony on the grounds that it invaded the province of the judge to

19   instruct the jury.  It is not clear that *Moses* addresses the latter issue.  However, regardless of

20   whether *Moses* applies to petitioner's third ground for relief, the record makes clear that the

21   claim provides no basis for federal habeas relief.

22   The Court of Appeals explained its conclusion with respect to petitioner's challenge to

23   the expert testimony of Dr. Reus and Dr. Wheeler as follows:

REPORT AND RECOMMENDATION - 19

1    Haq argues that both Dr. Wheeler and Dr. Reus's testimony regarding the
2    definitions of intent, premeditation and insanity, invaded the province of the judge
     by providing legal instructions.  We reject this argument.

3         If the legal question in a case is in dispute, expert testimony that expresses
     an opinion as to the definition of this question is improper.  Here, Dr. Reus
4    showed PowerPoint slides during his testimony that defined "insanity," "mental
     state," "premeditation," and "intent."  Dr. Wheeler also referenced the legal
5    definitions provided by the State.  But, the legal definitions of intent,
     premeditation, and insanity were not in dispute, nor did Dr. Reus's PowerPoint
6    presentation state an incorrect or inaccurate statement of these legal principles.
     Indeed, the definitions of premeditation, intent, and insanity used by Dr. Reus
7    mirrored the definitions provided to the jury by the judge at the beginning of trial
     and then again before their deliberations.  The trial court did not abuse its
8    discretion by admitting this testimony.

9         Dr. Reus also testified that the question of insanity was a legal one and
     that "from a legal standpoint, the question is at this particular point in time of this
10   event" was Haq able to perceive the nature and quality of his actions or tell right
     from wrong.  He also stated that premeditation had to be "sufficiently long that
11   you, as a jury, are convinced that there was thought—that the act was thought
     over ahead of time."  Haq argues that these statements were unconstitutional
12   invasions of the province of the judge.

13        Assuming, without deciding, that these statements were inaccurate and
     erroneous statements of law, Haq failed to object to them.  Thus, he must
14   demonstrate they constituted a manifest constitutional error under RAP 2.5(a)(3).

15        Here, the alleged error is not manifest.  Dr. Reus's statements occurred
     during a many-week trial, with many other expert witnesses.  Though Haq
16   attempts to show prejudice, noting the hung jury in the first trial, in which Dr.
     Reus did not testify, this is insufficient to show manifest error in the trial in which
17   the jury convicted Haq.  This is because the differences in outcome could have
     resulted from other differences between the two trials.  In sum, Haq fails to show
18   that Dr. Reus's statements constitute manifest error.

19   (Dkt. 13, Ex. 2 at 20-21.)

20        Petitioner argues that the state court wrongly decided this issue because federal courts

21   have consistently held that legal instructions are not proper subjects for expert testimony.  (*See*

22   Dkt. 14 at 11-12.)  However, petitioner identifies no United States Supreme Court authority

23   which requires a result different than that reached by the Washington Court of Appeals.  He

     REPORT AND RECOMMENDATION - 20

therefore fails to demonstrate that the Court of Appeals' adjudication of his claim constituted an unreasonable application of clearly established federal law.

Petitioner also fails to show any actual prejudice arising out of the allegedly improper expert testimony.  The record demonstrates that the definitions of intent, premeditation, and insanity relied upon by the state's experts were used by the defense expert as well.  (*See* Dkt. 17, Ex. 52 at 95.)  In addition, the record demonstrates that it was made clear to the jury that the definitions relied upon, and discussed by, the experts were provided by the State to guide their assessments, but that the court would ultimately instruct the jury on the applicable law and the jury would be expected to rely on those instructions.  (*Id*., Ex. 52 at 130,132 and Ex. 54 at 127-28, 131-32.)  As petitioner makes no showing that the challenged testimony "had substantial and injurious effect or influence in determining the jury's verdict," petitioner is not entitled to federal habeas relief with respect to his third ground for relief.  *See Brecht*, 507 U.S. at 638.

<u>Ground Four:  Right to Present a Defense</u>

Petitioner asserts in his fourth and final ground for relief that evidence relevant to the defense was improperly excluded at trial. (Dkt. 7 at 10.)  Petitioner's amended petition fails to identify the precise evidence at issue in this claim.  However, a review of the Washington Court of Appeals' opinion affirming petitioner's convictions, in combination with petitioner's response to respondent's answer a review of the state court record reveals that this claim arises out of the trial court's refusal to allow petitioner's experts to testify about anecdotal evidence regarding the connection between "manic flips" and an anti-depressant petitioner had been prescribed.  (Dkt. 13, Ex. 2 at 21-22 and Dkt. 14 at 15-19.)  Respondent argues that the state court reasonably determined that exclusion of the defense expert's anecdotal evidence did not violate petitioner's right to present a defense.  (Dkt. 11 at 21-23.)

REPORT AND RECOMMENDATION - 21

1    "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in

2   the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution

3   guarantees defendants 'a meaningful opportunity to present a complete defense.'"  *Crane v.*

4   *Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984))

5   (internal citations omitted).  Criminal defendants have the right "to present and have considered

6   by the jury all relevant evidence to rebut the State's evidence on all elements of the offense

7   charged."  *Montana v. Egelhoff*, 518 U.S. 37, 41-42 (1996).

8    The right to present a defense is, however, not absolute.  *Id*. at 42.  "The accused does not

9   have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise

10   inadmissible under standard rules of evidence."  *Id*. (quoting *Taylor v. Illinois*, 484 U.S. 400, 410

11   (1988)).  A state court's decision to exclude evidence "must be so prejudicial as to jeopardize the

12   defendant's due process rights." *Tinsley v. Borg*, 895 F.2d 520, 530 (9th Cir. 1990).

13    The Washington Court of Appeals rejected petitioner's claim regarding the exclusion of

14   anecdotal evidence, explaining its reasoning as follows:

15       Under the Fifth, Sixth and Fourteenth Amendments, a defendant has the
      right to appear, testify, and defend himself at trial.[28]

16
17       The right of an accused in a criminal trial to due process is, in essence, the
      right to a fair opportunity to defend against the State's accusations.  The rights to
      confront and cross-examine witnesses and to call witnesses in one's own behalf
18      have long been recognized as essential to due process.[29]

19       Haq sought to introduce Dr. Robert Julien's stories, told to him by medical
      professionals, regarding the odd or aggressive behavior triggered by Haq's
20      antidepressant, Effexor.  The trial court did not abuse its discretion in excluding
      this evidence.  Here, Haq was able to present his own witnesses and other
21      evidence vital to his defense.  Indeed, Haq's witnesses ***did*** present evidence as to

22       [28] [Court of Appeals footnote 175] *See Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d
   1019 (1967); *Chambers v. Miss.*, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

23       [29] [Court of Appeals footnote 176] *Chambers*, 410 U.S. at 294, 93 S.Ct. 1038.

REPORT AND RECOMMENDATION - 22

the potential side-effects caused by his medication. Dr. Julien was asked whether he thought Effexor was a wise choice for Haq, and he responded that, based on a 2006 study that indicated Effexor was associated with the greatest risk of mania, it was not.[30]   Later Dr. Julien described a study that attempted to answer "the question of would antidepressants make your mental health worse if given to bipolar patients to treat bipolar depression. And of all those looked at, Effexor was by far the one most likely to cause a manic flip. . . ."[31]

Haq relies largely on *Washington v. Texas*,[32] but that case is distinguishable. There, the defendant claimed that a Texas statute, which did not allow testimony by an accomplice, violated his Sixth Amendment right to compulsory process and to obtain witnesses in his favor.[33]   The court concluded that:

> [t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense. . . .  Just as an accused has the right to confront the prosecution's witnesses for the purposes of challenging their testimony, he has the right to present his own witnesses to establish a defense.[34]

The lack of testimony about anecdotal evidence on a subject that was discussed at trial is distinguishable from *Washington*.  The court's ruling was not an abuse of discretion.

(Dkt. 13, Ex. 2 at 21-22.)

The state court applied the proper standard in evaluating petitioner's claim and reasonably concluded that the trial court's decision to exclude certain evidence did not violate petitioner's right to present a defense.  The trial transcript makes clear that petitioner was permitted to, and did in fact, present relevant evidence regarding the potential side effects of his medication.  Petitioner makes no showing that the decision of the Court of Appeals was contrary

---

[30] [Court of Appeals footnote 177]  Report of Proceedings (Nov. 16, 2009) at 150.

[31] [Court of Appeals footnote 178]  *Id*. at 152.

[32] [Court of Appeals footnote 179]  388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

[33] [Court of Appeals footnote 180]  *Id*. at 15-16, 87 S.Ct. 1920.

[34] [Court of Appeals footnote 181]  *Id*. at 19, 87 S.Ct. 1920.

REPORT AND RECOMMENDATION - 23

to, or constituted an unreasonable application of, clearly established federal law.  Accordingly,

petitioner's federal habeas petition should be denied with respect to his fourth ground for relief.

Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA)

from a district or circuit judge.  A certificate of appealability may issue only where a petitioner

has made "a substantial showing of the denial of a constitutional right."  See 28 U.S.C. §

2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could

disagree with the district court's resolution of his constitutional claims or that jurists could

conclude the issues presented are adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, this Court concludes that

petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted

in his federal habeas petition.

CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's amended petition

for writ of habeas corpus be denied and that this action be dismissed with prejudice.  This Court

further recommends that a certificate of appealability be denied with respect to all claims

asserted by petitioner in his amended federal habeas petition.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and

served upon all parties to this suit within **twenty-one (21)** days of the date on which this Report

and Recommendation is signed.  Failure to file objections within the specified time may affect

your right to appeal.  Objections should be noted for consideration on the District Judge's motion

calendar for the third Friday after they are filed.  Responses to objections may be filed within

REPORT AND RECOMMENDATION - 24

1    **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will

2    be ready for consideration by the District Judge on April 25, 2014.

3            DATED this 3rd day of April, 2014.

4                                                          *James P. Donohue*

5                                                          _____
                                                          JAMES P. DONOHUE

6                                                          United States Magistrate Judge

REPORT AND RECOMMENDATION - 25